IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| GREGORY SPIVEY,<br><br>   Plaintiff,<br><br> v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>   Defendant. | CIVIL ACTION NO.: 5:24-cv-57 |

**O R D E R**

Plaintiff contests the decision of Administrative Law Judge Craig Petersen ("the ALJ" or "ALJ Petersen") denying his claim for Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision. Doc. 11. Defendant asserts the Commissioner's decision should be affirmed. Doc. 12. For the reasons that follow, the Court **AFFIRMS** the ALJ's decision. The Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on February 26, 2021, alleging an onset date of October 10, 2019. R. 17.[1] Plaintiff subsequently filed an application for Supplemental Security Income on December 23, 2020, alleging the same onset date. Id. On October 10, 2023, ALJ Petersen held a hearing, at which Plaintiff, who was

---

[1] A transcript of the entire proceedings before the Social Security Administration appears at Document Number 10. The transcript includes paginated Record cites. Docs. 10-1 to 10-8. I refer to the transcript using these same Record cites.

represented by counsel, appeared and testified. Id. Larry Shedd, a vocational expert ("VE"), also appeared at the hearing.

ALJ Petersen denied Plaintiff's claims after the hearing in a decision on November 22, 2023. R. 17–35. The Plaintiff's date last insured was December 31, 2019. R. 18. However, the ALJ found that Plaintiff was not disabled prior to September 23, 2022, but was disabled as of September 23, 2022, and remained disabled through the date of the ALJ's decision.[2] R. 14-45. Thus, the ALJ denied Plaintiff's claims. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

Plaintiff, born on September 23, 1972, was 47 years old at the time of the alleged onset date and 51 years old at the time of the ALJ's decision in 2023. R. 144. Plaintiff has at least a high school education. R. 33. Plaintiff previously worked as a corrections officer. R. 32.

## DISCUSSION

I.   **The ALJ's Findings**

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

---

[2] Plaintiff's age category changed from a "younger individual" to an individual "closely approaching advanced age" on September 23, 2022. R. 33. The ALJ determined Plaintiff became disabled on that date because of the age-category change, not because of any RFC change.

42 U.S.C. § 423(d)(2)(A).  Under the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.  If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.  Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004), superseded on other grounds by 20 C.F.R. § 404.1520c.  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of a claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he

can adjust other work in the national economy, considering his age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since his alleged onset date, October 10, 2019.  R. 19.  At step two, ALJ Petersen determined that Plaintiff had the following severe impairments: diabetes mellitus with neuropathy; lumbar spine degenerative disc disease; cervical spine degenerative disc disease; right knee residual effects meniscus repair; mild bilateral ankle degenerative joint disease with tendonitis; varicose veins of the bilateral lower extremities; coronary artery disease; sleep apnea; obesity; major depressive disorder; generalized anxiety and panic disorder; and post-traumatic stress disorder.  R. 19–20.  At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment. R. 20.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff can push/pull up to 10 pounds occasionally.  Plaintiff can stand and walk up to four of eight hours and sit up to six of eight hours with normal breaks.  Plaintiff requires use of a device, such as a cane, to ambulate to and from work areas.  Plaintiff can occasionally climb stairs and ramps but never climb ladders or scaffolds.  Plaintiff can frequently balance and occasionally stoop, kneel, crouch and crawl.  Plaintiff can occasionally perform overhead reaching and can occasionally use foot controls.  There should be no concentrated exposure to vibration and wetness.  There should be no exposure to unprotected heights or other hazards.  Plaintiff is limited to simple, routine work and work involving simple, work-related

decisions with few, if any, workplace changes. Plaintiff can occasionally interact with co-workers, supervision, and the public. R. 24.

At the next step, the ALJ determined Plaintiff is unable to perform any past relevant work. The ALJ determined transferability of job skills prior to September 23, 2022, is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," regardless of whether Plaintiff has transferable job skills. R. 33. Beginning on September 23, 2022, Plaintiff has not been able to transfer job skills to other occupations because his RFC eliminates all but unskilled work. Id. The ALJ concluded at the fifth and final step that, prior to September 23, 2022, Plaintiff could perform jobs, such as dowel inspector, gauger, and adjuster, all of which exist in significant numbers in the national economy. R. 33–34. The ALJ concluded that, beginning on September 23, 2022, the alleged onset date, and through the date of the decision, no jobs exist in significant numbers in the national economy that Plaintiff could perform. R. 34.

## II.     Issues Presented

Plaintiff asserts the ALJ erred in three ways. First, Plaintiff argues the ALJ did not resolve a conflict between the RFC determination and the medical opinion of Dr. Kamal Mohiuddin, M.D., who had a consultative examination with Plaintiff about neck pain. Doc. 11 at 7–11. Second, Plaintiff argues the ALJ impermissibly "cherry-picked" Plaintiff's medical records. Specifically, Plaintiff states that the ALJ selectively credited records related to his mental health and knee injuries. Id. at 11–19. Finally, Plaintiff argues that the ALJ's RFC determination did not account for Plaintiff's medically related absences from work. Id. at 19–23.

**III.     Standard of Review**

It is well established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence, or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

Substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker,

679 F.2d 1387, 1389 (11th Cir. 1982), overruled by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

IV.     **Substantial Evidence Supports the ALJ's Consideration of Dr. Mohiuddin's Opinions**

Plaintiff argues that ALJ Petersen gave partial weight to Dr. Mohiuddin's opinions but failed to adopt Dr. Mohiuddin's opinion that Plaintiff "may" have difficulty performing repetitive neck movements.  Doc. 11 at 9.  Plaintiff argues that Dr. Mohiuddin's opinion conflicts with the assessed RFC and the ALJ never assessed that conflict.  Plaintiff argues that this error is harmful because "it is unknown if Spivey could perform the occupations identified by the VE and accepted by the ALJ if he had difficulty with repetitive neck movements."  Id. at 10.

The Commissioner argues that the ALJ's RFC assessment accounted for Dr. Mohiuddin's opinions and included appropriate limitations.  Doc. 12 at 8.  The Commissioner also argues that Dr. Mohiuddin's opinions are vague and speculative and that none of those opinions indicate that Plaintiff had any actual difficulties performing activities requiring repetitive neck movements.  Id.

The ALJ must explain any conflict between the RFC and medical opinions.  Weidlich v. Comm'r of Soc. Sec., No. 22-13309, 2023 WL 8015753, at *2 (11th Cir. Nov. 20, 2023) (citing SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)).  Plaintiff has not identified a conflict between Dr. Mohiuddin's opinion and the RFC assessment for the ALJ to explain.  Dr. Mohiuddin opined that Plaintiff "may" have difficulty with repetitive neck movements.[3]  R. 32,

---

[3]     Even though Dr. Mohiuddin offered this "may" observation, he also stated, "There are no significant limitations noted during today's evaluation that would affect [Plaintiff's] ability to perform fine and gross movements effectively required to perform ADL's and [Plaintiff] has dexterity appropriate for use of a computer keyboard, buttoning clothes, and tying shoe laces."  R. 1836.

7

1836.  Plaintiff states that "[t]he ALJ did not assess this limitation."  Doc. 11 at 9.  However, Plaintiff does not explain how Dr. Mohiuddin's opinion conflicts with the RFC.  The ALJ discussed Dr. Mohiuddin's opinions throughout the decision.  R. 23, 28, 30.  And the ALJ acknowledged Dr. Mohiuddin's opinion that Plaintiff may have difficulty with repetitive neck movements.  Thus, it is clear that the ALJ fully considered Dr. Mohiuddin's opinions when assessing Plaintiff's RFC.

In addition, Dr. Mohiuddin's opinion was speculative and did not lay out a specific limitation for which the Court can assess any conflict.  See Lorie W. v. Comm'r of Soc. Sec., Civil Action No. 3:20-cv-56, 2021 WL 9700602, at *15 (N.D. Ga. Sept. 30, 2021) (explaining that an opinion "qualified by the word 'may' . . . necessarily leaves open the possibility that [the claimant] may not have such limitations.").  Because this opinion does not provide any specific limitation, there is nothing with which the RFC to conflict.  It is Plaintiff's burden to demonstrate specific limitations that conflict with the RFC.[4]  Here, he has not satisfied that burden.  See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (finding that the burden primarily falls on the claimant to prove disability).

Plaintiff cites Weidlich to support his position, but Weidlich is clearly distinguishable from this case.  In Weidlich, the ALJ's RFC assessment limited the plaintiff to lifting no more than 20 pounds.  2023 WL 8015753, at *2.  However, the ALJ in that case found a doctor's

---

[4]   The Commissioner argues that Dr. Mohiuddin's opinion was vague and speculative and, therefore, did not need to be included in the any RFC finding.  Doc. 12 at 8–9.  Plaintiff argues in response that the Commissioner is using a post hoc rationale for rejecting Dr. Mohiuddin's opinion that was never expressed by the ALJ.  Doc. 13 at 2.  Plaintiff's response is unconvincing.  The Commissioner is not suggesting that the ALJ did reject Dr. Mohiuddin's opinion for these reasons; instead, the Commissioner argues that the vague and speculative nature of the opinion undermines any notion that the opinion is a "medical opinion" as that term is used in the Regulations, and it shows that the RFC assessed by the ALJ is not in conflict with Dr. Mohiuddin's opinion.  Moreover, the ALJ expressly noted that "Dr. Mohiuddin's opinion is vague as to specific functional limitations . . . ."  R. 32.

opinion that the plaintiff could never lift more than 10 pounds to be persuasive. The conflict there was clear: the ALJ said that the plaintiff could lift 20 pounds, even though a doctor expressly limited the plaintiff to lifting 10 pounds. Not so here. Plaintiff points to no assessed limitation that directly conflicts with Dr. Mohiuddin's opinion.

In sum, Plaintiff has not identified a specific limitation in Dr. Mohiuddin's opinion that conflicts with the ALJ's assessed RFC. And the record shows that the ALJ evaluated Dr. Mohiuddin's opinions thoroughly. In addition, Plaintiff has not met his burden to demonstrate that the assessed limitations did not account for limitations in repetitive neck movements. Therefore, substantial evidence supports the ALJ's consideration of Dr. Mohiuddin's opinions.

V.   **Substantial Evidence Supports the ALJ's Consideration of Plaintiff's Medical Records**

   A.   **Mental Health Records**

Plaintiff argues that the ALJ "cherry-picked" Plaintiff's mental health records to reach his decision. Specifically, Plaintiff argues that the ALJ ignored relevant mental health records that show Plaintiff had, among other symptoms, "uncontrollable crying spells, sleep disturbances, panic attacks with crying, paranoia, extreme worry, binge eating, feelings of worthlessness and hopelessness, difficulty leaving his house, and memory issues." Doc. 11 at 14. Plaintiff argues that the ALJ "did not fully acknowledge the severity of [his] mental health issues and thus did not fully assess how they affected his ability to work." Id. at 16.

Plaintiff argues that, while the ALJ did discuss some of Plaintiff's mental health records, he failed to discuss several relevant records from the same time period. Plaintiff cites assessments/evaluations on: November 12, 2019 (R. 877, 891–92); November 26, 2019 (R. 1020, 1023); January 14, 2020 (R. 1062, 1065–66); June 30, 2020 (R. 1080, 1084); August 4, 2020 (R. 1089, 1093); September 15, 2020 (R. 1098); November 23, 2020 (R. 1116); January 14, 2021

9

(R. 1125); and June 9, 2022 (R. 1696, 1698). Plaintiff also cites counseling sessions on November 25, 2019 (R. 93); December 9, 2019 (R. 940); December 16, 2019 (R. 945); January 8, 2020 (R. 956); January 23, 2020 (R. 959–60); July 27, 2020 (R. 992); and September 8, 2020 (R. 995). Plaintiff argues that these records demonstrate a range of negative mental health outcomes that the ALJ did not address. Id. at 13–14.

Plaintiff argues that the records the ALJ did discuss omitted important information. Plaintiff argues the ALJ's discussion of Plaintiff's October 2020 record is "incomplete, does not contain a summary of his subjective complaints, and shows that his provider increased his Cymbalta." Id. at 15 (citing R. 1230–36). Regarding the November 2020 record, Plaintiff argues the ALJ "did not acknowledge or mention that approximately one and a half months later, [Plaintiff] admitted to having paranoia, daily crying spells, and panic attacks." Id. (citing R. 1125). Regarding the July 2021 record, Plaintiff argues the ALJ "did not mention that this record showed that he was having three to four crying spells a month and continued paranoia." Id. (citing R. 1264). Ultimately, Plaintiff argues that the ALJ's RFC assessment is erroneous because the ALJ cherry-picked some records and failed to discuss others.

The Commissioner argues in response that the ALJ properly discussed Plaintiff's mental health records and assessed an appropriate RFC based on the entire record. Doc. 12 at 10. The Commissioner argues that many of Plaintiff's citations to the record reference Plaintiff's subjective complaints, which the ALJ expressly considered. Id. The Commissioner argues that the ALJ properly considered Plaintiff's objective records and that the ALJ was not required to discuss every piece of evidence in his decision.

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). "RFC" is

defined in the Regulations as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Courts have described an RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing walking, lifting, carrying, pushing, or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. 20 C.F.R. § 404.1569a(b)–(d). When determining whether a claimant can return to his past relevant work, the ALJ must consider "all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e).

Substantial evidence supports the ALJ's determination. The ALJ extensively discussed Plaintiff's mental health records. The ALJ explained that Advance Practice Registered Nurse Mitzi Tyre evaluated Plaintiff's mental health on October 26, 2020, reporting that he was "cooperative, orientated to person, place, time, and situation, and exhibited grossly intact memory." R. 29. Plaintiff was also "attentive, and demonstrated good insight, sound judgment, normal thought content, logical and coherent thought processes, and an average fund of knowledge." Id. Plaintiff's mood was anxious.

The ALJ also discussed mental health treatment encounter notes from a November 23, 2020 appointment. Plaintiff stated that he was "doing good," sleeping better, that his mood was stable without outbursts or irritability, and that he had "some up and down days . . . they are not

as bad as they were." Id.  Mental health treatment encounter notes from July 19, 2021 indicated that Plaintiff felt his medications were working "pretty good," that his anxiety continued to bother him "if he goes out in a crowd, even grocery shopping . . . but it isn't as bad as it once was."  Plaintiff also reported that "I'm actually sleeping pretty good now."  R. 29–30.

The ALJ discussed multiple depression screens Plaintiff underwent.  A November 4, 2019 depression screen showed that Plaintiff "was negative for any symptoms."  R. 30.  A January 15, 2020 depression screen "was also negative."  Treatment encounter notes from September 1, 2020 showed that Plaintiff "denied experiencing any anxiety, sleep disturbance, or mood swings."  Id.

Nurse Practitioner Juliet Echenique examined Plaintiff on December 18, 2020, and reported that Plaintiff "denied experiencing anxiety, changes in sleep pattern, depression, fearfulness, or frequent crying."  Id.  Plaintiff was "alert and oriented, with no impairment of recent or remote memory."  Id.  Doctor Mohiuddin examined Plaintiff on August 27, 2022, and reported that Plaintiff "denied experiencing any mood changes, suicidal ideation, difficulty concentrating, or problems sleeping at night."  Id.  Plaintiff was "alert and oriented to time, place, and situation, cooperative, and did not appear depressed or anxious."  Id.  Plaintiff "was able to communicate with no deficits, and . . . exhibited intact recent and remote memory, and good insight and cognitive function."  Id.

The ALJ concluded by assessing a limitation in the RFC to simple, routine work and work involving simple, work-related decisions with few, if any workplace changes, and occasional interaction with coworkers, supervision, and the public.  The ALJ explained that this limitation "accounted for the possible location, duration, frequency, and intensity of [Plaintiff's] symptoms related to his mental impairments to the extent supported by and consistent with the

record." Id.  The ALJ also explained that the assessed limitation to occasional interaction with coworkers, supervision, and the public accounts for "factors that precipitate and aggravate . . . [Plaintiff's] anxiety related symptoms." Id.

The ALJ's decision shows that the ALJ considered the record as a whole and considered Plaintiff's specific mental health limitations in assessing the RFC.  The ALJ is not required to cite every mental health record "so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable" the Court to conclude that the ALJ considered his medical condition as a whole.  Dyer, 395 F.3d at 1211.  Here, the ALJ's detailed analysis of Plaintiff's mental health and specific limitations in the RFC assessment, which accounts for Plaintiff's mental health records, demonstrate that the ALJ considered Plaintiff's medical condition as a whole.  Plaintiff's argument that there were additional records that should have been given more weight asks the Court to reweigh evidence, which the Court cannot do.[5]  While one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court.  The Court's job is to determine whether substantial evidence supports the Commissioner's factual findings, and if so, uphold the Commissioner, even if the evidence preponderates in favor of the claimant.  Id. at 1210.  The ALJ accounted for limitations based on the record evidence in his RFC determination.  Substantial evidence supports the ALJ's RFC determination.

---

[5] Plaintiff relies on the unpublished decision in Jensen v. Comm'r of Soc. Sec., No. 21-13324, 2022 WL 2663585, at *1 (11th Cir. July 11, 2022), to argue that an ALJ cannot cherry-pick medical records that support his RFC determination.  However, Jensen is factually distinguishable from the instant case.  In Jensen, the Appeals Council granted review, vacated the ALJ's decision, and remanded the case to address new evidence.  After remand, the ALJ ordered a consultative examination, and the examiner concluded the plaintiff had an abnormal gait.  But the ALJ said that the plaintiff had a normal gait and the ALJ cited earlier records supporting that conclusion.  The Eleventh Circuit concluded that the ALJ failed to explain the significance of the "normal gait" conclusion or why that conclusion undermined the consultative examiner's opinion.  The facts of this case are markedly different from the facts in Jensen.

13

### B. Knee Health Records

Plaintiff argues that the ALJ also "cherry-picked" records related to Plaintiff's knee injuries. Plaintiff acknowledges that the ALJ discussed some of Plaintiff's knee-related records in the decision, but Plaintiff argues that the ALJ omitted important information about those records. Plaintiff explains that the ALJ did not acknowledge that in January 2020, Plaintiff's doctor "expressed concern about the etiology of multiple loose body and early degenerative changes unusual for someone [Plaintiff's] age." Doc. 11 at 17 (referring to R. 541). Plaintiff also complained of knee pain at later appointments in February and June 2020. Id. (referring to R. 569, 581, 592). In June 2020, Plaintiff's doctor "noted that a bone scan had shown increased uptake in his knees and shoulders" and believed that Plaintiff "would need a total knee replacement." Id. at 17–18 (referring to R. 595–96). Plaintiff had a left knee MRI in December 2021, which revealed a meniscus tear, high-grade chondral injuries, and "chondral loss of the deep trochlear groove." Id. at 18 (referring to R. 1344, 1346–48). The doctor explained that these issues "may never get better." Id. Plaintiff argues that the ALJ erred because he "did not fully acknowledge the severity of [Plaintiff's] knee issues." Id. Plaintiff also argues that this error is harmful because the VE testified an individual who needs a cane when changing from sitting to standing would not be able to perform occupations that the VE identified and the ALJ adopted in the RFC. Id.

The Commissioner responds that the ALJ considered Plaintiff's knee impairments and imposed appropriate limitations in the RFC. Doc. 12 at 12. The Commissioner argues that Plaintiff "failed to show that his knee impairment, or his physical condition as a whole, caused work-related limitations that the ALJ did not include in his RFC finding." Id.

Substantial evidence supports the ALJ's decision regarding Plaintiff's knee records. Regarding Plaintiff's knees, the ALJ determined that Plaintiff's right knee is subject to a severe impairment (residual effects from meniscus repair). R. 19. The ALJ acknowledged Plaintiff's claimed limitations in both knees. R. 25. The ALJ acknowledged Plaintiff's testimony at the hearing that "he has fifty or sixty pieces of bone 'floating around' in his knees, and that his knee problems are the result of a prior workplace injury." Id. Plaintiff also testified at the hearing that "he underwent bilateral scopes but still experiences pain, and . . . was prescribed a cane by the physician who treated his knees." Id. Plaintiff further testified that he has undergone surgeries on both knees. R. 26.

The ALJ determined that Plaintiff's physical impairments "are not as limiting as he alleges." Id. The ALJ explained that, on October 24, 2019, Plaintiff underwent a right knee scope. Id. In a post-operative appointment on January 15, 2020, orthopedic specialist James Scott examined Plaintiff. Dr. Scott reported Plaintiff's status as "post scope for multiple area of cartilaginous loose bodies and degenerative change, as well as a radial tear." Id. Dr. Scott also reported that Plaintiff "[w]ill need to see a rheumatologist." Id. Dr. Scott reported "that examination of the claimant's bilateral knees revealed mild effusion, and that the claimant reported increased pain with motion in both knees." Id. Dr. Scott also reported "some mild narrowing" bilaterally. Id. The ALJ also explained that Dr. Kamal Mohiuddin examined Plaintiff on August 27, 2022. Plaintiff reported experiencing knee pain at this appointment. Dr. Mohiuddin opined that Plaintiff "exhibited intact strength in his bilateral knees and ankles." R. 28.

As with Plaintiff's mental health records, the ALJ provided a detailed analysis of Plaintiff's knee records and explained why, considering those records, he assessed the RFC that

he did.  The ALJ's decision demonstrates that the ALJ factored Plaintiff's subjective complaints about his knees and objective medical records into Plaintiff's RFC.  The evidence cited by the ALJ demonstrates that the ALJ considered Plaintiff's medical condition as a whole.  Dyer, 395 F.3d at 1211.  While Plaintiff points to evidence in the record that he believes supports his position, a claimant must do more than this: he "must show the absence of substantial evidence" supporting the ALJ's decision.  Sims v. Comm'r of Soc. Sec., 706 F. App'x 595, 604 (11th Cir. 2017).  The evidence Plaintiff cites does not demonstrate that the ALJ failed to consider Plaintiff's entire record.  Substantial evidence, therefore, supports the ALJ's decision.

### VI. Plaintiff's Medical Absences Do Not Constitute a Work-Related Limitation

Plaintiff argues that the ALJ erred by not accounting for Plaintiff's medical absences in his RFC analysis.  Doc. 11 at 19.  Plaintiff cites to medical records indicating he had multiple medical appointments each month between the alleged onset date in October 2019 and the date Plaintiff was determined to be disabled in September 2022.  Id. at 21–22.  The VE testified at the hearing that an individual who consistently missed one day of work a month would not be able to work.  Id. at 22.  Therefore, Plaintiff argues, the ALJ erred by not discussing Plaintiff's absences in the RFC.  Id.

The Commissioner argues that Plaintiff has not shown his attending medical appointments constitutes a work-related limitation that would preclude employment.  Doc. 12 at 15.  The Commissioner argues that the ALJ "was not required to explicitly discuss Plaintiff's attendance at therapy sessions and medical appointments in assessing his RFC."  Id.

The Commissioner cites the Eleventh Circuit's unpublished decision in Cherkaoui v. Comm'r of Soc. Sec., 678 F. App'x 902 (11th Cir. 2017).  The court in that case found that "whether the number of medical appointments affects [a claimant's] ability to work is not an

16

appropriate consideration for assessing [his] residual functional capacity because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." Id. at 904. The Eleventh Circuit has since come to the same conclusion in a published opinion, stating that "factors other than the medically determinable impairments and related symptoms themselves, such as the time needed to attend appointments, are not proper considerations in the RFC assessment." Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1286 (11th Cir. 2025) (citing favorably to Cherkaoui).[6] Binding precedent is clear that the ALJ was not required to consider Plaintiff's attendance at medical appointments in assessing his RFC. Plaintiff's enumeration of error on these grounds is without merit.

## CONCLUSION

Based on the foregoing, the Court **AFFIRMS** the ALJ's decision. Further, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 26th day of September, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[6] Plaintiff relies on Blackmon v. Comm'r of Soc. Sec., No. 23-12894, 2024 WL 3495022, at *7 (11th Cir. July 22, 2024), but that case does not support Plaintiff's position. First, the court in Blackmon affirmed the ALJ's decision, which did not include any limitations due to medical absences. The court noted that the record in that case simply did not support the need for inclusion of absenteeism in the RFC. Furthermore, in Malak, the court noted that Blackmon stands for the broader proposition that it is not appropriate for an ALJ to account for medical absences in assessing an RFC. See 131 F.4th at 1286, n.5.